CASPER'S RIVER BARGE INN,
INC., Plaintiff,

v.

GREAT LAKES DREDGE & DOCK COM-
PANY, DREDGE GL-51, her engines,
tackle, and the United States of Ameri-
ca, Defendants.

UNITED STATES of America, Plaintiff,

v.

Alex KOMAR and Casper's River Barge
Inn, Inc., Defendants.

CASPER'S RIVER BARGE INN, INC.,
and Alex Komar, Plaintiffs,

v.

GREAT LAKES DREDGE & DOCK COM-
PANY, DREDGE GL-51, her engines,
tackle, etc., and United States of Ameri-
ca, Defendants.

Nos. 76 Civ. 2496 (MEL), 77 Civ. 1283
(MEL) and 77 Civ. 3148 (MEL).

United States District Court,
S. D. New York.

July 2, 1979.

Kirlin, Campbell & Keating, New York
City, for Casper's River Barge Inn, Inc. and
Alex Komar; Richard H. Brown, Jr., Paul
F. McGuire, Harry A. Gotimer, New York
City, of counsel.

McHugh, Heckman, Smith & Leonard,
New York City, for defendant Great Lakes
Dredge and Dock Co.; Stephen J. Buckley,
New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., New
York City, for defendant United States;
Gilbert S. Fleischer, Janis G. Schulmeisters,
U. S. Dept. of Justice, New York City, of
counsel.

LASKER, District Judge.

On April 3, 1976, the dredge GL-51,
owned by Great Lakes Dredge and Dock Co.
(Great Lakes), dredged a section of the Pas-
saic River opposite the foot of River Drive
in Passaic, New Jersey, as part of an Army
Corps of Engineers' program of mainte-

nance dredging. On April 13th, Casper's River Barge Inn, a converted railroad barge moored at the foot of River Drive and used there as a restaurant, broke its moorings, floated into the channel, and sank. Casper's River Barge Inn, Inc., and its principal, Alex Komar, sue the United States and Great Lakes under the Extension of Admiralty Act, 46 U.S.C. § 740, the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, charging that negligent implementation of the dredging program caused the casualty to Casper's River Barge. The United States sues under 33 U.S.C. § 409, for an order requiring Casper's River Barge Inn, Inc. and Alex Komar to remove the barge, which still lies where it sank, creating a hazard to navigation.

The case as to liability was tried to the court; this opinion constitutes the findings of fact [1] and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. For convenience, Casper's River Barge Inn, Inc. and Alex Komar will be referred to as plaintiffs, and the United States and Great Lakes as defendants.

Two issues must be resolved: First, whether the dredging undertaken by Great Lakes under contract for the Corps of Engineers in fact caused the casualty which befell Casper's River Barge. Second, assuming the dredging was the cause, whether the casualty was an inadvertent consequence of dredging planned and conducted with reasonable care, the cost of which must lie where it fell, or whether it was caused by the negligence of Great Lakes or the Corps, or both.

## I.

■ The dredging contract between Great Lakes and the Corps of Engineers provided for the removal, within the channel proper, of all material except ledge rock to a depth of ten feet below mean low water, with a permissible overdraft of up to two feet. In addition, Great Lakes was to remove material outside the channel to create a one in three grade sloping upwards from the outside edges of the channel. This was a "pay slope"—it was not contemplated that Great Lakes would in fact dredge a one in three grade; rather, Great Lakes was to make a vertical "box cut," dredging to the full channel depth outside the channel limits, in expectation that in due course the side of the cut would fall in, creating a slope with a grade approximating one in three.

Casper's River Barge had a draft of between two and two and one-half feet. It floated at all times except low water, when it rested on a broad mud flat extending into the river from the west shore. The plaintiffs assert that as a consequence of the dredging on April 3rd, the mud flat on which the barge rested at low water gave way at its offshore edge on April 13th, when the river was uncommonly low. As the offshore edge of the mud flat subsided, the barge tilted until it took on water, slid "down" the mud flat, and broke its moorings.

The defendants contend that the barge was not watertight, and that on April 13th the combination of a strong offshore wind (20 knots) and rotten timbers securing the mooring bollards on the deck of the barge caused the casualty. This explanation, however, is not convincing. Although the defendants argue the barge was never properly caulked, the barge floated (except at low water) without taking on excessive water. What water did seep through the hull was discharged by bilge pumps. (Testimony of Komar, Wilson) Thus, there is no reason to believe that the barge would not float once it broke its moorings, unless it took on water above its high water line. With regard to the mooring bollards, one of which pulled out during the casualty, there was conflicting testimony respecting the condition of the timbers supporting them. It appears, however, that though some deck timbers were rotten at the time of the

---

1. The testimony at trial has not been transcribed. Findings are based on the court's extensive notes, undisputed facts and exhibits.

casualty, the structural pieces below the deck, to which the bollards were secured, were sound. (Testimony of Komar, Atmenchuk) Finally, at the time of the casualty the river was uncommonly low, and the barge was aground on the mud flat. (Plaintiffs' Exhibit 45—Report of government inspector) In such circumstances it seems unlikely that a twenty knot wind could break the barge from its moorings.

In short, Casper's River Barge had rested without incident at the foot of River Drive for over ten years, floating at high water and resting on the mud flat at low water. (Testimony of Komar) The defendants' explanation for the casualty of April 13th is not plausible enough to overcome the inference that something other than everyday circumstances was the cause of the sinking.

In contrast, the plaintiffs' explanation is plausible and supported by the evidence. They argue that the dredging decreased the support for the mud flat on which the barge rested at low water, causing it to give way under the weight of the barge at a time when that weight was especially great because the river was unusually low. Subsidence was the contemplated result of the box cut used by Great Lakes in dredging the river. (Testimony of Woolworth, Zenger) Indeed, since the offshore edge of the barge was only thirty feet from the channel limit, if the river bottom had subsided to match the one in three pay slope specified in the dredging contract, the slope would have extended at least to the offshore edge of the barge, and as much as six feet beneath it, depending upon whether the channel was dredged to the minimum ten foot depth specified in the contract or to the maximum twelve feet. Finally, although one of the defendants' witnesses who inspected the mud flat shortly after the casualty testified that they saw no evidence of "bank collapse," he seems to have meant by that term something more catastrophic than plaintiffs contend occurred here. (Testimony of Andrews) Moreover, several photographs taken at the time suggest that offshore edge of the mud flat did indeed subside (Plaintiffs' Exhibits 21, 22, 45, 49, 50, 64, 91B, 91C), and Robert Woolworth, a civil engineer specializing in soil mechanics, concluded on the basis of his investigation and analysis that this is what happened, and that it happened as a consequence of the dredging ten days earlier.

Based on this evidence, and the defendants' failure to suggest any other plausible explanation for the casualty, we find that as a consequence of the dredging on April 3rd, the support for the mud flat on which the barge rested at low water was undermined, and that on April 13th, when the river was lower than usual and the weight of the barge on the mud flat correspondingly greater than usual, the flat subsided, tilting the barge until it took on water above the high water mark, and putting such strain on the moorings that they gave way.

## II.

■ That the casualty of April 13th was caused by the dredging of April 3rd does not establish that Great Lakes or the United States is liable for the resulting injury. The plaintiffs must also establish that negligence on the part of one or both of the defendants contributed to the casualty. The plaintiffs assert that the Corps of Engineers was negligent in preparing dredging specifications which required dredging dangerously close to the barge, that Great Lakes negligently dredged even closer than required by the specifications, that neither defendant properly supervised dredging operations, and that although both had reason to believe the dredging might endanger the barge, neither gave any warning or took any other steps to avoid injury to the barge.

As noted earlier, the contract specifications called for a slope outside the channel with a grade approximating one in three. Such a slope would extend at least to the edge of the barge, and could extend up to six feet beneath it since the edge of the barge was only thirty feet from the channel. The plaintiffs argue that the Corps of Engineers was negligent in preparing such a specification, because in such circumstanc-

es it is obvious that the mud flat on which the barge rested at low water might give way. However, assuming that such a possibility is obvious, the specifications were not negligently prepared because they provided a reasonable general standard as defined above and in addition specifically obligated Great Lakes to take reasonable precautions to prevent injury to property near the dredging site. (Plaintiffs' Exhibit 24, Dredging Contract, at 1, 12, 13) The one in three grade specified in the specifications was a general standard which was to be modified to suit the circumstances. The question is not whether the general specifications created a risk of injury to Casper's River Barge, but whether the Corps of Engineers or Great Lakes was negligent in not modifying them in the vicinity of the barge to prevent such injury.

Testimony regarding how close to the barge dredging operations actually came was conflicting. The western edge of the channel was thirty feet east of the offshore (eastern) edge of Casper's River Barge. (Testimony of Zenga; Plaintiffs' Exhibit 14 (chart showing north end of barge thirty feet from channel, south end ten feet from channel)). The "box cut" required dredging five to ten feet outside the channel. (Testimony of Zenga) John Benson, who was operating the dredge bucket at the time dredging was conducted in the area of Casper's River Barge, testified that he did not dredge more than five feet outside the channel. John Zenga, Great Lakes' superintendent for the dredging project, testified that soundings taken after the dredging operation show that dredging occurred ten feet outside the channel. Mr. Komar, however, testified that he saw the bucket dredging "three to five feet" from the barge, more than twenty-five feet outside the channel. The dredging took place at night, however, and he may have misjudged the distance. Based on this evidence, plaintiffs have not shown that the dredging in fact occurred substantially closer to the barge than required by the specifications.

Nor have the plaintiffs shown that either defendant failed to provide adequate supervision as required by the specifications, since they have not shown that any of the personnel in direct control of dredging operations at any time did not fall within the rather general language of the specifications. (Plaintiffs' Exhibit 24 at 4, 13) That is, they presented no evidence that the supervisory personnel were not adequate in number or competent to supervise the operation.

The crux of the plaintiffs' case is their assertion that each of the defendants was aware that Casper's River Barge rested on a mud flat at low water, and that each should have appreciated the danger to the barge that the dredging operations consequently posed and warned Komar of it. Had they done so, Komar could have moved the barge until the river bottom had stabilized, or adjusted its moorings, or taken other appropriate precautionary measures. To establish liability on the part of either defendant on this theory, the plaintiffs must show that the defendant had actual notice that the barge rested on the mud flat at low water, and that in the circumstances it was unreasonable not at least to warn Komar of the possibility that the dredging might pose a threat to the barge.

The United States had actual notice that the barge rested on the mud flat at low water. Elwood Andrews, the assistant project manager for the Corps of Engineers, conducted a survey of the dredging area to identify potential dangers. This survey was conducted at low water, and Andrews observed the barge resting on the mud flat. (Plaintiffs' Exhibit 15 (Andrews deposition) at 18–19, 27) Great Lakes also had actual notice. The project supervisor, Zenga, also observed the barge resting on the mud flat at low water. (Testimony of Zenga; Plaintiffs' Exhibit 23 (Zenga deposition) at 19–20) In addition, employees of both defendants were in the area constantly, and it is reasonable to assume that at one time or another they observed the barge resting on the mud flat.

The question, then, is whether the defendants, aware that the barge rested on a mud flat at low water, were negligent in

failing to appreciate the threat to Casper's River Barge and warning Komar of it. Zenga, at least, was aware that as a result of the dredging the mud flat under the barge might subside, but assumed that this would pose no threat to the barge because the barge floated. (Plaintiffs' Exhibit 23 (Zenga deposition) at 29; see Plaintiffs' Exhibit 15 (Andrews deposition) at 27) He apparently neglected the possibility that the mud flat might subside unevenly, so that one edge of the barge would drop into the river while the other was still supported by the flat. Although this may have seemed a remote possibility at the time to the defendants, it is what in fact happened, and it is significant that when it did happen representatives of Great Lakes immediately hied to the scene, thereby at least impliedly recognizing that the casualty might have been connected to their dredging operations in the area ten days earlier. This suggests that though the possibility that the dredging might cause the casualty was remote, it was not so remote that a reasonable man would fail to recognize it.

In determining whether the defendants were negligent, it is necessary to consider how burdensome the task that they allegedly omitted was. Here, all that might have been required was to give informal notice to the owners of Casper's River Barge that there was some possibility that the dredging operations might pose a threat to the barge. Even though the perceived risk was remote, and might not have warranted any more burdensome precautions than this, we find that it was negligent of the defendants not to warn Komar of the possibility, however remote, that their dredging operations might endanger the barge. Even though the risk seemed slight it was clear that the stakes were great and the cost of taking precautions against it was so minimal that it was unreasonable not to provide warning.

The defendants suggest that if they were negligent in failing to appreciate the danger to Casper's River Barge and apprising Komar of it, Komar himself was contributorily negligent in failing to recognize the danger for himself. However, Komar knew nothing of dredging, and had no reason to know that defendants were employing a box cut intended to cause the river bed to subside, which might in turn have had the result which in fact ensued. If he had any apprehension, as apparently he did, when he saw the dredging proceeding near the barge, his fears were allayed when nothing of moment happened during or shortly after the dredging.

In sum, we find that the defendants dredging operations were the cause of the casualty that befell Casper's River Barge on April 13, 1976, that both defendants were negligent in failing to warn the plaintiffs of the risk to the barge created by the dredging, and that the plaintiffs were not contributorily negligent in failing to appreciate that risk themselves.

For the reasons stated, judgment as to liability is granted for the plaintiffs.

It is so ordered.